```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

| | |
|---|---|
| **SETH GHANTOUS,** | |
| Plaintiff, | **Case No. 14 C 3544** |
| v. | |
| **ILLINOIS CONCEALED CARRY LICENSING REVIEW BOARD,** *et al.*, | **Hon. Harry D. Leinenweber** |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss [ECF No. 26]. For the reasons stated herein, the Motion is granted.

### I.   BACKGROUND

The following facts are drawn from the allegations in Plaintiff Seth Ghantous's Complaint, which are taken as true for the purposes of deciding this Motion to Dismiss. *Gillman v. Burlington N. R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir. 1989). Plaintiff applied for a license to carry a concealed weapon under Illinois' Firearm Concealed Carry Act (the "Act").  430 Ill. Comp. Stat. 66/10.  Under the Act, the Illinois Department of State Police ("ISP") "shall issue a license to carry a concealed firearm" if the applicant:

   (1)   meets the qualifications of Section 25 of [the] Act;

   (2)   has provided the application and documentation required in Section 30 of [the] Act;

   (3)   has submitted the requisite fees; and

>     (4) does not pose a danger to himself, herself, or others, or a threat to public safety as determined by the Concealed Carry Licensing Review Board.

*Id.* 66/10(a).

Any law enforcement agency, however, may object to an applicant receiving a license if the agency has "reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." *Id.* 66/15(a). If an agency objects, the application and the objection are reviewed by the seven-member Concealed Carry Licensing Review Board (the "Board"). *Id.* 66/15-20. The Board then considers only the application and the objection materials to decide whether to grant a license, unless at least four Board members vote to "request additional information [or testimony] from the law enforcement agency, [ISP], or the applicant." *Id.* 66/20(e).

Generally, the Board has 30 days from when it receives an objection to issue a decision. *Id.* 66/20(f). The Board will issue a license unless it finds "by a preponderance of the evidence that the applicant poses a danger to himself or herself or others, or is a threat to public safety." *Id.* 66/20(g). If the applicant's license is denied, the applicant may challenge the Board's decision in state court. *Id.* 66/87(a).

In this case, the Board found that Plaintiff satisfied the first three requirements above, but failed the fourth based on a law enforcement agency's objection to his applications. The Board issued a written decision to Plaintiff that stated the Board found "by a

preponderance of the evidence that you pose a danger to yourself or others/are a threat to public safety." [ECF No. 1, ¶ 16]. The decision also advised Plaintiff of his right to appeal the decision.

Plaintiff then sought review of the Board's decision in state court via Illinois' Administrative Review Law, as allowed under the Act. *Id.* 66/87(b). Shortly thereafter, with that action still pending, Plaintiff filed suit in this Court against the Board, its members, the ISP, and various officials within the ISP. In Count I, Plaintiff alleges that the Act's licensing process deprived him of his procedural due process rights under the Fourteenth Amendment. Count II alleges that the Act is unconstitutional, both facially and as applied to Plaintiff. Plaintiff urges the Court to extend the First Amendment's prior restraint analysis to his Second Amendment case and find that the Act imposes an unconstitutional prior restraint on his right to carry a firearm in public. Finally, in Count III Plaintiff asks this Court to review the Board's decision according to the Act's review procedures.

Defendants have moved to dismiss the Complaint, arguing that: (1) Counts I and III are moot in light of Defendants' Motion in the state court case seeking voluntary remand to the Board for further review; (2) under Federal Rule of Civil Procedure 12(b)(1), the Court should abstain from hearing Counts I and III pursuant to *Younger v. Harris,* 401 U.S. 37 (1971) and *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800 (1076); and (3) Counts I and II fail to state a claim under Rule 12(b)(6).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) requires the Court to analyze the legal sufficiency of the complaint, not the factual merits of the case. *Autry v. Nw. Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). The complaint must do more than recite the elements of a violation; it must plead facts with sufficient particularity so that the right to relief is more than a mere conjecture. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

## III. ANALYSIS

### A. Mootness – Counts I and III

As a threshold matter, the Court must decide whether it should dismiss or stay Counts I and III as moot. The mootness doctrine limits a federal court's jurisdiction to live cases or controversies. *Damasco v. Clearwire Corp.,* 662 F.3d 891, 894 (7th Cir. 2011). "[A]t all stages of litigation," the mootness doctrine requires that both parties "maintain a personal stake in the outcome." *Id.* "Therefore, once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because he has no remaining stake." *Id.* (internal quotation marks omitted).

After Defendants filed their Motion to Dismiss, they filed a Motion in the state case to voluntarily remand the case back to the Board for further review of Plaintiff's license application in light of recently enacted "Emergency Rules." Under these new rules, when

the Board determines that "an objection appears sustainable," the Board must provide the applicant with "notice of the objection, including the basis of the objection and the agency submitting the objection, within ten calendar days." Ill. Admin. Code tit. 20, § 1231.230(e) (2014). After receiving notice of the objection, the applicant then has ten days "to submit any additional material that the applicant wants [the Board] to consider in response to the objection." *Id.* Defendants argue that because they have agreed to remand the state case to the Board for further review under these new rules, Plaintiff's first and third counts are moot and should be dismissed or at least stayed until the state court resolves the issue.

Plaintiff responds that he intends to object to Defendants' Motion for Remand in the state proceedings because Plaintiff asserts that he is challenging the procedures themselves, both the ones prescribed by the Act and the new emergency rules. For example, part of Plaintiff's due process claim is that the Act's preponderance of the evidence standard falls short of what is required by due process, and these new rules would leave in place the Act's requirement that the Board use the challenged standard.

As to Count I, if the state court grants Defendants' Motion to Remand and the Board on remand grants Plaintiff a license, Plaintiff will no longer have a live case or controversy because he will have received a concealed carry license and will not have been deprived of any right. In that case, Plaintiff will have received the license he

seeks and Count I would be moot. The result is not different simply because Plaintiff challenges the very procedures by which he might be granted a license on remand; being denied a license is the very injury that provides Plaintiff with standing. *See, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (stating that one of the "irreducible constitutional" elements of standing is that "the plaintiff must have suffered an "injury in fact").

If, however, the state court denies the Motion, Count I would not be moot. Moreover, Defendants' offer to remand the case is not an offer that "satisf[ies] the plaintiff's entire demand" as to Count I, because Plaintiff in that count is not merely seeking remand to the Board. *See, Damasco,* 662 F.3d at 894. The Court therefore finds that staying — rather than dismissing — Count I is appropriate to determine whether the state court's resolution of the remand motion moots Count I.

As to Count III, Plaintiff seeks to enforce the Act's administrative review procedures and asks this Court to either order Defendants to issue Plaintiff a license or to order a remand to the Board. Unlike Count I, Defendants' Motion to Remand is indeed an offer to satisfy Plaintiff's demands in Count III in full. Thus, the Court dismisses Count III as moot because Plaintiff has the opportunity to obtain the very relief demanded in Count III by accepting Defendants' offer to remand Plaintiff's state case to the Board. See, Id.

## B. Sufficiency of Plaintiff's Prior Restraint Claim – Count II

In Count II, Plaintiff alleges that the Act is unconstitutional both facially and as applied to him because it requires "prior government permission" before "law-abiding citizens of Illinois" may exercise their Second Amendment rights [ECF No. 1, ¶ 26]. Plaintiff asks this Court to extend the First Amendment's prior restraint analysis to the Second Amendment.

Plaintiff acknowledges that neither the Supreme Court nor the Seventh Circuit (nor any other jurisdiction that the Court is aware of) has extended prior restraint analysis into the Second Amendment context. The Court declines Plaintiff's invitation to take that step here. Prior restraint analysis is appropriately confined to the First Amendment context because the framers included the free speech and freedom of the press clauses precisely to combat the practice of censorship that was common in England. *See, Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 716 (1931) ("[L]iberty of the press, historically considered and taken up by the Federal Constitution, has meant, principally although not exclusively, immunity from previous restraints or censorship."); *see also,* Michael L. Meyerson, *The Neglected History of the Prior Restraint Doctrine: Rediscovering the Link Between the First Amendment and the Separation of Powers,* 34 Ind. L. Rev. 295, 295 (2001) ("Oliver Wendell Holmes . . . declare[d] that the main purpose of the First Amendment was 'to prevent all such previous restraints upon publications as had been practiced by other

governments.'") (quoting *Patterson v. Colorado ex rel. Attorney General of Colorado,* 205 U.S. 454, 462 (1907)).

The concerns regarding prior restraints are historically unique to the First Amendment. The Court is unaware of any similar history surrounding the Second Amendment. The Court therefore declines to extend prior restraint analysis to the Second Amendment context and dismisses Count II.

### IV. CONCLUSION

For reasons stated herein, Defendants' Motion to Dismiss [ECF No. 26] is granted.

**IT IS SO ORDERED.**

                              Harry D. Leinenweber, Judge
                              United States District Court

Date:9/30/2014